**AMERICAN LA FRANCE FIRE ENGINE CO., Inc., to Use of AMERICAN LA FRANCE & FOAMITE INDUSTRIES, Inc., v. BOROUGH OF SHENANDOAH.**

**No. 10121.**

District Court, E. D. Pennsylvania.

Oct. 11, 1939.

Earl V. McLaughlin and Fred A. Hughes, both of Scranton, Pa., and John B. O'Brien, of Easton, Pa., for plaintiff.

Martin V. McGuire, of Shenandoah, Pa., James J. Gallagher, of Mahanoy, Pa., and Daniel J. Boyle, of Tamaqua, Pa., for defendant.

KIRKPATRICK, District Judge.

This action was begun by a bill in equity filed prior to the effective date of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The plaintiff is a manufacturer of fire apparatus. It seeks to recover from the defendant the reasonable rental value of two fire trucks, each consisting of a combination of pump, chemical engine and hose motor car. The new Rules are held applicable to the case, and the doubt as to equity jurisdiction because of an adequate remedy at law is thus eliminated. The trucks were delivered under what is called a "lease contract," which really amounts to a contract to sell, the purchase price of $31,168.01 being payable in annual installments denominated rent, over a period of seven years. The Borough used the trucks from September 6, 1927 to September 24, 1935, during which period certain payments aggregating $16,766.36 were made at irregular intervals. On the last named date, the plaintiff repossessed the trucks.

The written contract was invalid because its execution by the Borough authorities was not properly authorized by ordinance. Recognizing this, the plaintiff based its action upon the quasi-contractual obligation which the law, in some circumstances, imposes upon a municipality which has had the benefit of the use of property or services. The action is not brought either to recover the amount of the agreed payments (price or rental) upon the express contract, or to recover the fair value of the trucks themselves upon an implied contract to pay the purchase price, arising from receipt and retention of the subject of a sale. It is for their fair rental value for the period during which the Borough used them.

There would be no difficulty about the plaintiff's case if the only bar to its recovery were the want of formal authorization for the execution of the contract by the Borough officials. The principle allowing recovery under such circumstances is well recognized. Luzerne Tp. v. Fayette County, 330 Pa. 247, 199 A. 327.

More serious is the objection that any obligation which may arise from the transaction will create a debt beyond the constitutional limit of the Borough's borrowing capacity. At this point we have to deal not with legislative requirements prescribing formalities for municipal contracts, but with a direct constitutional prohibition (supported by a fundamental public policy)

against creating the debt in any way, shape, or form whatever. If an obligation does, within the meaning of the Constitution, increase a municipality's indebtedness beyond the legal limit, it makes no difference whether it is expressly assumed, or is implied in fact, or is implied in law (quasi-contract).

The Constitution of Pennsylvania, Article IX, Sec. 8, P.S., provides, "The debt of any county, city, borough, township, school district, or other municipality or incorporated district, except as provided herein, and in section fifteen of this article, shall never exceed seven (7) per centum upon the assessed value of the taxable property therein, * * *." It was agreed that the present Secretary of the Borough council, if called as a witness for the defendant, would testify that in the year 1927 the Borough could contract indebtedness up to the amount of $621,057.92, which amount is 7% of $8,872,256, the assessed valuation of the taxable property, and that the actual debt of the Borough in 1927, excluding any obligation which might arise in connection with these trucks, was $655,214.87.

Laying aside the question raised by the plaintiff as to whether the testimony of this official is competent to establish the facts stated, we may take up at once what appears to be the controlling point in the case.

It has been held in several decisions in Pennsylvania that obligations incurred for operating expenses payable out of current revenues, reasonably anticipated to be sufficient to cover them, do not diminish the borrowing power of the borough for the year then current. "When a contract made by a municipal corporation pertains to its ordinary expenses, and is, together with other like expenses, within the limit of its current revenues and such special taxes as it may legally and in good faith intend to levy therefor, such contract does not constitute 'increases of indebtedness' within the meaning of the constitutional provision limiting the power of municipal corporations to contract debts." Dillon, Municipal Corporations, Sec. 88. See Kelley v. Baldwin, 319 Pa. 53, 179 A. 736, and other cases. This is true of temporary loans made for the purpose, and is equally true of direct obligations incurred for services, rental of necessary equipment, etc.

The courts have also dealt with the objection that this rule opens the door to various subterfuges which might permit the municipality to do indirectly what it is forbidden to do directly. See Kreusler v. McKees Rocks School District, 256 Pa. 281, 100 A. 821; Pennsylvania Power & Light Co. v. Bethlehem, 323 Pa. 313, 185 A. 710. In Pittsburgh Paving Co. v. Pittsburgh, 332 Pa. 563, 3 A.2d 905, 912, the Court, in ascertaining the constitutional limit of a city's borrowing power, excluded temporary obligations of a similar character because the record indicated that the loans were made by the municipal officers with the bona fide intention to pay them out of current revenues sufficient for that purpose. There was no attempt to evade the law, and the outstanding uncollected taxes for the year were at all times in excess of the temporary borrowings. The Court said, "if such loans do not overreach current revenues and do not extend beyond the present means of payment possessed by the municipality, then no debt is created in a constitutional sense." Nor is it material to the question that the loans, as it turned out, were not actually paid out of current revenues, but some portions of them were carried over into succeeding years.

It may appear from some opinions that the intention of the Borough officers to evade the constitutional debt limitation is the test as to whether or not these temporary obligations are to be considered debts within the meaning of the Constitution. However, that can hardly be the question, because in many cases the obligation sought to be enforced is quasi-contractual. It is not voluntarily assumed, and hence, as a matter of fact, there is no real intention about it one way or the other. The question is discussed in Scranton Electric Co. v. Old Forge Borough, 309 Pa. 73, 163 A. 154, where the obligation to pay for electric light was sustained on a quasi-contractual theory, though in excess of the borough's borrowing power. Incidentally, that case was one in which the current obligations had remained unpaid and had been carried over into subsequent years. It would seem therefore that the ultimate test must be the adequacy of the current revenues to take care of the fair value of the use of the property as a current expense.

In the present case the evidence submitted would establish a fair rental value for the trucks in excess of $300 per month which the plaintiff asks for. There can be no doubt that this charge would be well within the reasonably anticipated ability of the Borough to pay out of current reve-

nues. There is no evidence to show that there was any conscious attempt on the part of the Borough officers or anyone else to evade the debt limitation by means of a scheme to make additional obligations appear as current expenses as there was in the Bethlehem case.

Cases (in all of which the present plaintiff was a party) dealing with similar situations in other states are American-LaFrance & Foamite Industries v. Arlington County, 169 Va. 7, 192 S.E. 758; American LaFrance & Foamite Industries v. Floydada, 15 F.Supp. 390, affirmed 5 Cir., 87 F.2d 820; American LaFrance v. Plattsburg, W. D. Missouri, April 2, 1937[1]; American-LaFrance, Inc. v. Philadelphia, 183 Miss. 207, 184 So. 620.

Judgment may be entered for the plaintiff in accordance with the foregoing opinion.

---

[1] No opinion for publication.